UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVID H. DEAN,<br>　　　Plaintiff,<br>v.<br><br>LOWE'S HOME CENTERS, INC.,<br>　　　Defendant. | CA No. 04-12605-mel |

**DEFENDANT'S MEMORANDUM IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT**

**I.   INTRODUCTION**

David Dean ("plaintiff" or "Dean") claims that an hourly employee racially harassed him on a single occasion by placing a noose on his desk. He also claims that, after management responded to the incident, he was subjected to further harassment by other co-workers who placed "returned" merchandise in his work area. Summary judgment should enter for Lowe's Home Centers ("Lowe's") because the single isolated incident was remedied immediately, and because Dean concedes that it was his job to receive and process the "returns."

**II.   FACTS[1]**

Mr. Dean was hired as the Return to Manufacturer ("RTM") clerk at Lowe's newly opened Danvers, Massachusetts store in January 2001. (Deposition of David Dean, hereinafter "Pl. Dep.," p. 103; deposition of plaintiff's manager, Robert Estes, hereinafter "Estes Dep.," pp. 24-26).[2] On November 8, 2001, one of Dean's friends and

---

[1] Lowe's separately submits with its Motion for Summary Judgment a Statement of Undisputed Facts.
[2] The transcripts from the depositions of plaintiff and Estes are attached to the Affidavit of Amy L. Nash, hereinafter "Nash Aff.," as Exs. A and B.

co-workers, Daniel Puccio, placed a noose on plaintiff's desk. (Ex. 4 to Pl. Dep.; Pl. Dep., pp. 60-64; Ex. C to Nash Aff.). Immediately after Dean reported the incident, Lowe's investigated the matter, placed Puccio on a "final" written warning and accepted his resignation. (Pl. Dep., pp. 63-64; Exs. 3 and 4 to Pl. Dep.; Exs. C and E to Nash Aff.). This process was completed the day after the incident occurred. (Id.). At the time, Dean told Lowe's that he did not want Puccio to lose his job (Pl. Dep., pp. 66, 73-74), but that he was satisfied with the manner in which it handled his complaint. (Pl. Dep., p. 64).

As the RTM clerk, Dean was responsible for processing merchandise that had been returned to the store by Lowe's customers. (Pl. Dep., pp. 58-59). To that end, store employees from numerous departments working various shifts regularly and customarily placed "returns" outside the locked holding area where Dean worked, which was also known as "the cage." (Estes Dep., pp. 17-18; Pl. Dep., pp. 53-55). Because the surrounding area was quite confined, "returns" sometimes were left in front of the door to the cage. (Estes Dep., p. 79; Pl. Dep., p. 52; Affidavit of Robert Estes, hereinafter "Estes Aff.," ¶ 6).[3] This occurred <u>before</u> and after the November 8, 2001 incident with Puccio. (Pl. Dep., pp. 60 and 105). Plaintiff does not know which employees placed the returned merchandise in front of his "office"[4] door, or what motivated them to do so. (Pl. Dep., pp. 54-56).[5]

In August 2001, three months before the Puccio incident, plaintiff received his first written performance review. (Ex. 9 to Pl. Dep.; Pl. Dep., pp. 101-02). In the

---

[3] Other than Dean, only the department manager and senior store managers had a key to the cage. Thus, employees generally were unable to place returns inside it. (Estes Aff., ¶6; Estes Dep., pp. 19-20).
[4] Plaintiff sometimes refers to the cage as his office.
[5] Thus, it is not surprising that plaintiff did **not** note on any of his performance evaluations or written disciplinary warnings, all of which contained a section specifically reserved for employee concerns, either that employees "blocked" his office door with "returns" or that anyone at Lowe's mistreated him in any fashion after the Puccio incident. (Pl. Dep., pp. 104-05; Exs. 9 through 13 to Pl. Dep.; Estes Aff., ¶¶ 10 and 13).

2

evaluation, Estes noted that plaintiff took too much time away from work, was "real[l]y grasping at . . . aspects of the RTM position. . . . [and] need[ed] some improvement on his attendance and on the organization [of] his paperwork, like OFR and Cleared RTM report." (Ex. 9 to Pl. Dep.). Plaintiff signed the evaluation and believed, "it fairly and accurately reviewed [his] work during the first eight months of [his] tenure at Lowe's." (Pl. Dep., p. 101). In January 2002, plaintiff received his second written evaluation in which Estes again criticized him for "constant time away from work" and lack of organization, in particular with respect to the reports associated with his position. (Ex. 10 to Pl. Dep.). Plaintiff agreed with this evaluation, too. (Pl. Dep., pp. 106-07).

In January 2002, plaintiff also received a written warning for poor performance which once again focused on the disorganization of the RTM area. (Pl. Dep., p. 109; Ex. 11 to Pl. Dep.). Plaintiff did not disagree with the warning. (Id.). On April 1, 2002, Dean received two more written warnings from Estes. (Exs. 12 and 13 to Pl. Dep). In the first, Estes criticized plaintiff for failing to properly complete the "RTM cleared report." In the second, Estes reprimanded him for keeping the RTM area in "atrocious" condition. (Exs. 12 and 13 to Pl. Dep; Pl. Dep., p. 113). Plaintiff agreed with these warnings as well. (Pl. Dep., pp. 113-15). Plaintiff also agreed with Estes' offer, explained in the final written warning, to transfer him to a comparable[6] position in the lawn and garden department so that he could have an opportunity to succeed at Lowe's "instead of decline." (Pl. Dep., pp. 78-79, 115; Ex. 13 to Pl. Dep). Indeed, plaintiff admitted that by April 2002, he felt his job responsibilities in the RTM department "became too overwhelming" because he "had too much stuff to do." (Pl. Dep., pp. 112-

---

[6] The transfer resulted in no loss in pay and had no adverse effect on the terms and conditions of Dean's employment. (Estes Aff., ¶ 16; Pl. Dep., p. 79; see Ex. D to Nash Aff.).

3

14). In October 2002, six months after his transfer to the Lawn and Garden department, and without prior complaint, plaintiff simply abandoned his job. (Pl. Dep., p. 84).

### III. ARGUMENT

#### A. Summary Judgment Standard.

Summary judgment is appropriate where, as here, "the pleadings, depositions, answers to interrogatories . . . together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Where a plaintiff fails to produce sufficient evidence to establish an essential element of his case," summary judgment for the defendant must be granted. Cerqueira v. Corning Net Optix, 2004 U.S. Dist. LEXIS 17308, at *12-*13 (D. Mass. 2004). Because there are no genuine material fact contests, and Dean cannot establish essential elements for either his discrimination or retaliation claim, summary judgment in Lowe's favor is required. Id.

#### B. Lowe's Promptly Investigated and Effectively Remedied Plaintiff's Allegations of Co-Worker Discrimination.

Lowe's is not liable for Puccio's conduct because the Company immediately and effectively responded to plaintiff's complaint.[7] "An employer is not strictly liable for

---

[7] To establish a *prima facie* claim of hostile work environment, a plaintiff must show that he belongs to a protected class, that he was harassed on that basis, that the harassment was sufficiently pervasive and severe to alter the conditions of his employment and create an abusive working environment, and some basis for employer liability. Saad v. Stanley Street Treatment and Resources, Inc., 1994 U.S. Dist. LEXIS 20728, *22 (D. Mass. 1994). Thus, quite apart from Lowe's agency defense, the conduct of which plaintiff complains – a single callous incident – was not, under all the circumstances, sufficiently severe to establish a hostile work environment claim. Williams v. Astra USA, Inc., 68 F. Supp.2d 29, 34-36 (D. Mass. 1999) (employer not liable for a claim of hostile work environment based on race where conduct was comprised of five racial slurs over three years); Ward v. Massachusetts Health Inst., 48 F. Supp.2d 72, 80-81 (D. Mass. 1999) (granting employer's summary judgment motion on hostile work environment claim where offensive conduct was "relatively isolated").
  Other than the November 2001 noose incident, plaintiff alleged no other race-based harassment or discrimination during his two years at Lowe's. As to the actual nature of the incident, it is critical to note that Dean considered Puccio a friend. (Pl. Dep., pp. 60–64). In that vein, Puccio apologized to plaintiff immediately after Dean expressed his upset over the matter. (Pl. Dep., p. 74). This, together with the

acts of harassment perpetrated by a coworker." Cerqueira, 2004 U.S. Dist. LEXIS 17308 at *15-*16 (summary judgment to employer on claims of co-worker harassment because the employer investigated the alleged harassment immediately). Rather, "[a]n employer's potential liability is negated if, upon receiving actual or constructive notice of the harassment, the employer responds with immediate and effective remedial action." Id. at *16. Said differently, an employer is liable for **co-worker** harassment or discrimination only if it knows or should know of same and fails to take prompt steps to stop it. College-Town, Div. of Interco, Inc. v. Massachusetts Comm. Against Discrimination, 400 Mass. 156, 166-67 (1987); Hoffman v. Kada, Inc., 2000 Mass. Super. LEXIS 537, *10 (Mass. Super. Ct., Oct. 31, 2000).

Dean does not question that Lowe's immediately responded to his complaint. It began investigating the incident on the same day it occurred. Management issued a written warning and final notice to Puccio the next day. It then accepted Puccio's resignation. During his two week notice period, Lowe's moved Puccio to another store department, and Dean and he had no further contact or problems. (Exs. C and E to Nash Aff.; Pl. Dep., pp. 60-68; Exs. 3 and 4 to Pl. Dep.). Cerqueira, 2004 U.S. Dist. LEXIS 17308 at *17-*18 (court found that investigation, initiated the day after its employee lodged his complaint, was "immediate"); Foley v. P&G Distrib. Co., 95 Fed. Appx. 847 (D. Mass. 2003) ("Remedial action within one month is, by all standards, prompt"); Saad v. Stanley Street Treatment & Resources, 1994 U.S. Dist. LEXIS 20728 (D. Mass. 1994)

---

witness statements (see Ex. E to the Nash Aff.), and Dean's not wanting Puccio to lose his job, reveals that Puccio's tying a makeshift noose while a group of employees fashioned a variety of knots during a work break (id.) was a thoughtless gesture by a young man who did not contemplate in advance the negative perception that could result from his actions. In gauging the incident, it is also important to note that the noose was not accompanied by any racial comment or statement, which further demonstrates that it was not an intentionally racist act. In this context, the incident is not sufficiently severe to form the basis of a hostile work environment claim under Mass. Gen. Laws. c. 151B.

5

(initiation of investigation two days after the complaint was lodged was "immediate"); see also Pedigo v. National Cart Co., Inc., 2004 U.S. App. LEXIS 8230, at **2-**3 (8th Cir. 2004) (summary judgment granted where evidence showed that employer removed a noose and offensive racist graffiti immediately after learning about them).

Lowe's actions to remedy plaintiff's complaint also were effective. "The chief measure of adequacy of an employer's response is not the victim's own sense of personal justice, but rather – particularly where there is no prior history of workplace harassment – whether the behavior that gave rise to the complaint has ceased and does not threaten to reoccur." Saad, 1994 U.S. Dist. LEXIS at *32. After Dean's complaint, Puccio resigned and never bothered Dean again. (Pl. Dep., pp. 63-64). Lowe's, "in good faith [took] those measures which were both feasible and reasonable under the circumstances to combat the offensive conduct" and therefore cannot be held liable for discrimination. DeGrace v. Rumsfeld, 614 F.2d 796, 805 (1st Cir. 1980) cited in Cerqueira, 2004 U.S. Dist. LEXIS 17308, at *20-*21.

    C.    **Plaintiff's Has Not Demonstrated A *Prima Facie* Claim of Retaliation.**

To succeed in his retaliation claim, plaintiff must show (i) that he engaged in protected conduct; (ii) that he suffered an adverse employment action; and (iii) a causal link between the two. Mole v. University of Massachusetts, 58 Mass. App. Ct. 29, 787 N.E.2d 1098, 1107 (2003) (reciting *prima facie* case). Because Dean cannot show that any of the alleged adverse employment actions were the result of his complaint against Puccio, his retaliation claim fails as well.

### 1. Plaintiff cannot establish that Lowe's employees placed returned merchandise in front of his door because he engaged in protected conduct.

Plaintiff next alleges that employees placed "returns" in front of his "office" door in retaliation for his complaint to management about Puccio. Because plaintiff admits that he does not know who placed the merchandise in front of his door or why, he cannot demonstrate either that the co-workers knew about his complaint (Pl. Dep., pp. 54-56), or that they acted with a retaliatory intent. What is more, plaintiff admits that, as the one responsible for processing "returns," his co-workers properly left returned merchandise in his work area. (Pl. Dep., p. 52). As a result, plaintiff cannot establish a causal link between the placement of the merchandise and his protected activity. Pilgrim v. Trustees of Tufts College, 118 F.3d 864, 871 n. 1 (1st Cir. 1997).

Dean also admits that employees had placed returns in front of his door before[8] he engaged in any protected activity. (Pl. Dep. pp. 60 and 105). This further undermines any claim that employees placed merchandise in his work area **because** he complained to management about Puccio's conduct. Dziamba v. Warner & Stackpole LLP, 56 Mass. App. Ct. 397, 407-08 778 N.E.2d 927, 935 (Mass. App. 2002) (where alleged adverse employment action occurred before alleged protected activity, court affirmed lower court's grant of summary judgment because record lacked "evidentiary support" for plaintiff's retaliation claim); Fennell v. First Step Designs, Ltd., 83 F.3d 526, 535-36 (1st

---

[8] In context, placing returned merchandise in front of plaintiff's office could not possibly constitute an adverse employment action because, as the RTM clerk, plaintiff was responsible for processing this merchandise both before and after his complaint. "To be adverse, an action must materially change the conditions of plaintiff['s] employ." Gu v. Boston Police Department, 312 F.3d 6, 14 (1st Cir. 2001); MacCormack v. Boston Edison Co., 672 N.E.2d 1, 7 (Mass. 1996) (plaintiff must establish "a change in working conditions that materially disadvantaged him" to demonstrate an adverse employment action).

7

Cir. 1996). In all, Dean cannot show that his co-workers left returns in front of his work area **because** of his protected activity.

### 2. Plaintiff cannot show that his negative performance evaluations, written disciplinary warnings and lateral transfer were in retaliation for any protected activity.

Even though he does not plead his case as such, plaintiff similarly cannot show that his negative performance evaluation in January 2002, the written warnings he received in January and April 2002, or his April 2002 transfer to the Lawn and Garden department were causally linked to his complaint of racial harassment. First, Dean admitted repeatedly in his deposition both that Estes was fair to him and that he did not disagree with any of the warnings or his transfer. (Pl. Dep., pp. 77-78, 101-07, 113-15).[9] Second, where an employer has expressed dissatisfaction with an employee's performance before he engages in protected activity, the employee cannot establish that similar, subsequent reprimands about his performance were the result of his protected activity. Dziamba, 778 N.E.2d at 935. In Dziamba, the court affirmed the trial court's grant of summary judgment on plaintiff's retaliation claim where the employer had warned plaintiff in his performance evaluations of unsatisfactory performance "before plaintiff had done or said anything that could be characterized as exercising his protected rights." Id. Under the teaching of Dziamba, plaintiff cannot show that the warnings he

---

[9] What is more, during his employment at Lowe's, Dean was aware of Lowe's open door policy (Pl. Dep., pp. 88-89; Ex. 5 to Pl. Dep.), which provided that he could contact persons outside of the Danvers store concerning any issues he had with management. (Pl. Dep., pp. 48-49). Dean also understood that he was permitted to report and should have reported any instance of discrimination or retaliation by Estes to persons superior to him in the organization, to Lowe's internal audit department or to human resources. (Pl. Dep., pp. 45, 49-50, 90-91, 71-72). Thus, if Dean had a problem with Estes' supervision, he knew how to address it. In fact, Dean never complained to anyone at Lowe's that Estes' evaluations, warnings or transfer of Dean were in any way discriminatory, retaliatory or unfair. (Pl. Dep., pp. 46, 73-74, 77-80, 106, 110-111). This is particularly remarkable where Dean regarded all Lowe's employees with whom he dealt outside of the Danvers store to be decent, fair-minded and responsive people (Pl. Dep., pp. 47-48), including, in particular, the regional human resources representative, Cheri Smith. (Pl. Dep., pp. 37-38 and 44-47).

8

received after the November 2001 incident were caused by his complaint to management about Puccio's conduct. They merely continued the very same criticism plaintiff had received in the months prior thereto.

For example, in his August 2001 performance evaluation, Estes identified plaintiff's absenteeism and disorganization. (Ex. 9 to Pl. Dep.). In January 2002, Estes provided Dean with another performance evaluation, and a written warning, reiterating his criticism of plaintiff's time away from work and disorganization. (Exs. 10 and 11 to Pl. Dep.) In April 2002, Estes disciplined Dean in writing on two occasions for similar deficiencies in his performance. (Exs. 12 and 13 to Pl. Dep.). Ultimately, Estes transferred plaintiff to a position in the Lawn and Garden department at the same rate of pay so that he would have a better chance to succeed at Lowe's. (Ex.13 to Pl. Dep.; Ex. B to Nash Aff.). That Plaintiff agreed with each evaluation and written disciplinary warning, and with his transfer, eviscerates any claim that Estes' actions were in retaliation for Dean's complaint. See Parish v Pahs, 872 F. Supp. 562, 567 (N.D. Ind. 1995) (no causal link where six months passed between protected activity and employee's termination and where employee "for the most part" agreed with his unsatisfactory performance record); see also Jackson v. Champaign Nat'l Bank & Trust Co., 2000 WL 1376534, *8 (Ohio Ct. App., Sept. 26, 2000) (employee's "efforts to prove a causal link between protected activity and adverse action are further undermined by the fact that she agreed to the transfer"). Quite simply, plaintiff cannot establish the third and essential element of his *prima facie* case: that his evaluations, discipline or lateral transfer were **because** of his complaint against Puccio. Dziama, 778 N.E.2d at 935.

### 3. Plaintiff cannot establish pretext.

Assuming *arguendo* that Dean establishes a *prima facie* claim of retaliation, his claim must nonetheless be dismissed because he cannot possibly show that Lowe's legitimate, non-discriminatory reasons for taking the supervisory actions it did were a pretext for discrimination. In Sullivan v. Liberty Mutual Ins. Co., 444 Mass. 34 (2005), the Massachusetts Supreme Judicial Court upheld the lower court's grant of summary judgment in finding that plaintiff failed to establish pretext because she presented no evidence disputing whether Liberty Mutual "truly believe[d]" the legitimate business reasons it proffered for the adverse action in question. Id. at 57. Dean cannot meet this burden. He has presented no evidence that Estes did not have a basis for warning him that his time away from work and disorganization were detrimentally affecting his work. (Exs. 9 through 10 to Pl. Dep.). Nor has Dean presented evidence that Estes did not have a basis for laterally transferring plaintiff to the Lawn and Garden department. How could he? Dean admitted that the warnings were well founded and that the transfer gave him a second chance. (Pl. Dep., pp. 78-79, 101-07, 115).

### 4. Plaintiff cannot prove constructive discharge.

The only remaining basis for plaintiff's retaliation claim, and the sole basis for his claim to lost wages, is that his manager in the Lawn and Garden department, Glen DesLauriers, harassed him into quitting by imposing an unpredictable work schedule. (Pl. Dep., p. 81).[10] However, plaintiff has advanced no evidence that DesLauriers knew of Dean's historic complaint against Puccio, which occurred a year earlier and involved

---

[10] Lowe's briefly addresses this undeveloped theory, which seems to have emerged during plaintiff's deposition, even though Dean conceded that in all relevant respects, "[he] didn't have any problems with . . . Lowe's management . . . after [he was] transferred into the lawn and garden center . . ." (Pl. Dep., pp. 79-80).

10

employees in another department (Pl. Dep., pp. 82-83). Nor has plaintiff advanced any evidence that DesLauriers was motivated by same, or that DesLauriers actually set Dean's work schedule, which, for the most part, he did not.[11] Further, plaintiff cannot show that the schedule was illegitimate or pretextual in any respect. (Pl. Dep., p. 83). Indeed, Dean concedes that he never complained to anyone at Lowe's about how he was treated in the Lawn and Garden department in general (Pl. Dep., p. 84), or about his schedule there in particular. (Pl. Dep., p. 83). What is more, Dean cannot show that the work schedule – his only complaint about the Lawn and Garden job – was so abusive that it rose to the level of creating a hostile work environment, or was so intolerable that it justified a constructive discharge. McNair v. The Home Depot, 2002 WL 32348501, *1 (E.D. Pa. 2002) ("without more, being spoken to in a hostile tone and failure to accommodate requests for schedule changes . . . are not materially adverse employment actions").

At most, Dean alleges that he was troubled by his schedule in the Lawn and Garden department because, "on a couple of occasions in [his] first week or so [and then a few times thereafter for the next few months] they asked [him] either to stay or come in late to water plants and put stock away[.]" (Pl. Dep., pp. 86-87). Dean further alleges that, "it was hard" (id., at pp. 83 and 81) to go from his fixed schedule as RTM clerk to a fluctuating schedule in the Lawn and Garden department. But he concedes that he quit his job at Lowe's seven months into his tenure in the Law and Garden area, and without

---

[11] Plaintiff's first assignment as the RTM clerk is one of the few positions at Lowe's stores that has a fixed, 7:00 a.m. to 4:00 p.m., Monday to Friday schedule. (Estes Aff., ¶ 21). Most other hourly positions, including those in the Lawn and Garden area, require employees to work a "flexible schedule," involving regular night and weekend shifts. (Id., ¶¶ 19-20). Indeed, at the time Dean worked there, the schedule for employees in the Lawn and Garden area was set automatically by Lowe's staffing software, "Staffworks." (Id., ¶¶ 18-19, 22). Hence, Glen DesLauriers exercised little control over Dean's schedule, (Id., ¶ 22), and thus could not have "harassed" him on that basis.

11

ever complaining to anyone about his schedule (id., p. 83), only when his supervisor asked him to stay late one night and Dean refused to do so because he had to go to his "part-time job." (Id., p. 84). Thus, even if Dean's entire characterization of these events is true, his working conditions were not "intolerable," and he cannot sustain a claim for constructive discharge. Phillips v. Taco Bell Corp., 156 F.3d 884, 890 (8th Cir. 1998) ("being scheduled to work some evening hours is insufficient to establish constructive discharge"); McCoy v. Macon Water Authority, 966 F. Supp. 1209, 1221-22 (M.D. Ga. 1997) (as a new work schedule did not result in loss of privileges, it did not constitute an adverse employment action; work schedule similarly was insufficient to establish constructive discharge); Long v. First Union Corp. of Virginia, 894 F. Supp. 933, 943-44 (E.D. Va. 1995) (that supervisor would not alter plaintiff's schedule to accommodate her school schedule was not an adverse employment action and could not support a claim for constructive discharge).

In this light, Dean cannot show that DesLauriers or Lowe's took an adverse job action against him. Pedigo v. National Cart Co., Inc., 95 Fed. Appx. 847, 849 (8th Cir. 2004) (given that the sole adverse action underlying his claim was constructive discharge, "[b]ecause [plaintiff] was not constructively discharged, he suffered no adverse job action as a matter of law"). Thus, even if Dean could somehow prove that DesLauriers set Dean's work schedule, and that he did so in retaliation for a complaint Dean made to a different manager in a different department one year earlier, see, e.g., Filipovic v. K&R Express Systems, Inc., 176 F.3d 390, 398-99 (7th Cir. 1999) (that four months passed between the date plaintiff filed his charge and the alleged harassment was "counter-evidence of any causal connection"); see also Richmond v. Oneok, Inc., 120 F.3d 205,

209 (10th Cir. 1997); Cobian v. New York City, 2000 WL 1782744, *18 (S.D.N.Y. 2000); and Reeves v. Digital Equipment Corp., 710 F. Supp. 675, 677 (N.D. Ohio 1989), which of course he cannot do, there is no evidence that DesLauriers or Lowe's did anything that rose to the level of actionable conduct against Dean during his tenure in the Lawn and Garden department.

### IV. CONCLUSION

David Dean's friend and co-worker acted thoughtlessly in tying a noose and leaving it on plaintiff's desk. In response, management remedied the matter to Dean's satisfaction immediately. Thereafter, Dean's problems at Lowe's were of his own making. He continued to perform his job poorly, and six months later he abandoned the new assignment Estes provided to him as a second chance. Dean advances no evidence, because there is none, that after he complained about Puccio, Lowe's did anything to him that rose to the level of actionable conduct, or that it did anything whatsoever **because** of his protected activity. For these reasons, Lowe's requests that the court grant its motion for summary judgment.

LOWE'S HOME CENTERS, INC.

By its attorneys,

_____
David C. Casey (BBO # 772560)
Amy L. Nash (BBO # 647364)
LITTLER MENDELSON, P.C.
One International Place
Suite 2700
Boston, MA 02110
(617) 378-6000

Dated: June 6, 2005

13

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon counsel for the plaintiff by mail on this 6th day of June 2005.

_____
Amy L. Nash