UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DAVID H. DEAN,
    Plaintiff,

v.

LOWE'S HOME CENTERS, INC.,
    Defendant.

CA No. 04-12605-mel

**AFFIDAVIT OF ROBERT ESTES IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I, Robert Estes, do depose and state as follows:

1. I am the manager of a Lowe's store in Orchard Park, New York.

2. When plaintiff David Dean was employed by Lowe's at its Danvers, Massachusetts store, I was an Assistant Store Manager there and served as Mr. Dean's second-level supervisor. I did so throughout his employment at Lowe's, both when he was employed as the store's Return To Manufacturer ("RTM") clerk and when he worked in the Lawn and Garden department.

3. After Mr. Dean left his job at Lowe's, I continued in my position as Assistant Store Manager at the Danvers, Massachusetts store until I was promoted to my current position in 2002.

4. As the RTM clerk, Mr. Dean was responsible for processing merchandise that had been returned to the store by Lowe's customers.

5. When store employees received returned merchandise, known as "returns," they were asked to place them outside the locked holding area where Mr. Dean worked, which was also known as "the cage."

6. The area surrounding the cage was quite small, so employees often had no choice but to place returns in front of the door to the cage. Other than Mr. Dean, only the department manager and senior-level store managers had a key to the cage, so employees generally could not place returns inside.

7. Accordingly, over the course of a workday, numerous store employees from various departments, working on different shifts, placed merchandise in front of the cage.

8. As an Assistant Store Manager at the Danvers, Massachusetts store and as Mr. Dean's second-level supervisor, I participated in the evaluation of his performance at the store.

9. In each of Mr. Dean's two performance evaluations, I criticized his performance as the RTM clerk. In particular, I criticized his attendance and disorganization.

10. Performance evaluations at Lowe's provide a space for employee comments. Mr. Dean never noted on any of his performance evaluations that employees had blocked his office door with returns.

11. Mr. Dean similarly never expressed any disagreement with either of the performance evaluations he received while he was the RTM clerk. He also never noted on his evaluations that he believed he was the subject of discrimination or retaliation.

12. When he was the RTM clerk, I also issued Mr. Dean several written warnings for poor performance which focused on the disorganization of the RTM area.

13. Mr. Dean agreed with all of these warnings as well. Mr. Dean never complained in any of these written warnings (which also contain an area for employee

comments) that he was the subject of discrimination or retaliation. He never complained in any of these warnings that employees were placing returns in front of the cage door.

14. In fact, when items piled up in the RTM area and blocked the cage door, it was because Mr. Dean failed to timely process the returns.

15. In April 2002, I offered Mr. Dean the opportunity to transfer to a comparable position in the Lawn and Garden department at the Danvers store. Mr. Dean accepted my offer because, as he explained to me, he was overwhelmed with his duties as the RTM clerk. He agreed that the transfer would give him a chance for a fresh start at the Company.

16. Mr. Dean's transfer to the Lawn and Garden department resulted in no loss in pay to him and did not change any other terms or conditions of his employment.

17. Through my experience as an Assistant Store Manager and Store Manager at Lowe's, I am familiar with the Company's practices for scheduling hourly employees, with the Company's scheduling software for hourly employees, known as "Staffworks," and with the hours normally worked by hourly employees in various positions at Lowe's stores.

18. During Mr. Dean's employment at Lowe's, the Danvers, Massachusetts store used Staffworks as its scheduling software and adhered to Lowe's practices for scheduling hourly employees.

19. An employee's availability to work is determined by the information the employee provides in his application. An employee can modify the information concerning his availability by submitting a written request to the store manager or human resources manager, who can approve or deny same.

20. Based on information supplied by the employees about their availability to work, Staffworks generates schedules for all hourly employees. Unless scheduling restrictions identified by the employees are programmed into the software, Staffworks automatically schedules all hourly employees for night and weekend work. This schedule is known as the "flexible schedule."

21. Thus, for nearly every hourly position at Lowe's, and especially for those in sales areas such as the Lawn and Garden department, an hourly employee must work regular night and weekend shifts.

22. As the RTM clerk, Mr. Dean held one of the few hourly positions at Lowe's which has a fixed schedule. RTM clerks normally work Monday through Friday from 7:00 a.m. to 4:00 p.m.

23. In his job application, Mr. Dean indicated that he was available to work "all day" every day except for Sunday mornings. To my knowledge, he never submitted a request to modify the hours he was available to work.

24. Because Staffworks automatically determined the schedules of hourly employees in the Danvers store at the time Mr. Dean worked there, supervisors such as Glen DesLauriers, who managed Mr. Dean in the Lawn and Garden department, exercised little if any control over Mr. Dean's work schedule.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY ON THIS __3__ DAY OF JUNE 2005.

                                                                              Robert Estes